### In re NEW YORK CITY ASBESTOS LITIGATION.

#### New York State Supreme Court: All Counties Within the City of New York

### In re JOINT EASTERN AND SOUTHERN DISTRICTS ASBESTOS LITIGATION.

#### United States District Court, Eastern District of New York and Southern District of New York

#### This Document Relates to: All Cases.

#### Index No. 4000.

United States District Court, E. and S.D. New York. New York State Supreme Court, City of New York.

March 13, 1992.

See also 737 F.Supp. 735, 772 F.Supp. 1380.

Before SIFTON, SWEET and WEINSTEIN, District Judges.

## MEMORANDUM

We attach the "Report of the Special Master Regarding the Resolution of Asbestos Personal Injury and Wrongful Death Cases in the Federal and State Courts in New York City" and congratulate him and his staff for a job well done. As a result of the efforts of judges and staff and the Special Master in the Eastern and Southern Districts of New York, coupled with the resolution of the Manville bankruptcy reorganization, the federal district courts of the Eastern and Southern Districts of New York are now free from asbestos personal injury/death lawsuits—litigation which clogged court dockets, used up valuable judicial time, delayed compensation to worthy victims, often resulted in inconsistent verdicts and prevented the prompt trial of criminal matters and other important civil disputes.

Many of the judges of the Eastern and Southern Districts participated in the efforts to reduce the back-log by trials and settlements of groups of cases before and during the early tenure of the Special Master. Justice Freedman's efforts in the state court were coordinated with the federal efforts, assisting greatly in disposing of both federal and state cases.

Although the Special Master's efforts in helping to settle thousands of asbestos lawsuits are now completed in the federal courts, his appointment as a Special Federal Master should be continued pending the resolution of all possible federal appeals. In addition, there remain potential disagreements arising out of allocation of settlement amounts among various plaintiff claimants, as well as various insurance and third-party indemnity disputes. Accordingly, his appointment is extended for six months.

In addition, asbestos personal injury/death litigation—although substantially reduced—still remains before the Honorable Helen Freedman in the state courts of New York. Accordingly, with Justice Freedman's consent, the Special Master will continue to function as a Referee to assist the remaining litigants in settling the pending state asbestos litigation. The federal district judges will assist in the settlement of state cases as requested by Justice Freedman.

In addition to expressing our appreciation to the Special Master and his staff, we note with thanks the extensive cooperation of most members of our highly skilled and devoted bar and the unfailing assistance of other judges and staff of the Eastern and Southern Districts of New York.

Finally, we must express our thanks to the members of the various juries who have been called upon to make an extraordinary effort in fulfilling their responsibilities as citizens in connection with these cases. They are to be commended for their months of tireless and exemplary service.

*Report of the Special Master Regarding the Resolution of Asbestos Personal Injury and Wrongful Death Cases in the Federal and State Courts in New York City*

This Report describes the clearing of the docket of asbestos cases in the Eastern and

Southern Districts of New York. It also describes the status of the greatly reduced docket in the State Supreme Court in the City of New York. Approximately 1,100 federal cases have been closed. An additional 457 were transferred to the Eastern District of Pennsylvania by the Multi-District Panel in the Federal Courts before settlement discussions and trial could be completed in the Eastern and Southern Districts. Hundreds of additional cases were settled or tried in the Southern and Eastern Districts of New York in the period immediately prior to the appointment of the Special Master. In addition, many cases not yet docketed have been settled and a consensus has been reached on resolution of future cases. Many cases outside these two districts have also been settled as part of this process. The parties have also settled over a thousand state cases.

On January 30, 1990, I was appointed as Special Master/Referee by the Honorable Jack B. Weinstein of the United States District Courts for the Eastern and Southern Districts of New York and by the Honorable Helen E. Freedman of the Supreme Court of the State of New York. My mandate was to assist the parties involved in the approximately 600 asbestos personal injury and wrongful death cases consolidated as the "Brooklyn Naval Shipyard Consolidation" to achieve a comprehensive settlement. Subsequently, on April 18, 1991, I was re-appointed as Special Master/Referee for the purpose of assisting in achieving a comprehensive resolution of the approximately 700 federal court and 880 state court asbestos personal injury and wrongful death cases consolidated by Judge Charles P. Sifton (United States District Court for the Eastern and Southern Districts of New York) and Justice Helen E. Freedman as the "Powerhouse Consolidations." On July 12, 1991, I was appointed as Special Master by Judge Robert W. Sweet to assist in the resolution of all asbestos cases remaining in the Southern and Eastern Districts of New York. My responsibilities as Special Master/Referee

included: supervising and directing the exchange of information necessary to effect settlement, including information about each plaintiff's medical condition and the location, time period and circumstances of each plaintiff's alleged exposure to asbestos; resolution of disputes regarding settlement-oriented discovery; resolution of disputes and questions about the factual basis for claims (particularly third-party contribution claims); developing and implementing a methodology for a comprehensive settlement; mediating settlement between the various parties; compiling and providing information and statistics as requested by the parties and the courts; allocating settlement moneys among individual plaintiffs; finalizing, confirming and documenting settlement terms and resolving any disputes that arise in the course of concluding settlements. In addition, the Special Master was asked to assist in the resolution of disputes between defendants and third-party defendants in the litigation and their insurance carriers.

I am pleased to report that the formal settlement process regarding the federal court asbestos personal injury and wrongful death claims has now concluded: *All federal court cases included in the Brooklyn Navy Yard and Powerhouse consolidations have been satisfactorily resolved.*[1] In addition, the bulk of the defendants involved in the state court consolidations have also settled the majority of actions in which they were named. Thus, the federal courts in New York City are, for all intents and purposes, free of the specter of costly, time consuming and inefficient asbestos personal injury/wrongful death litigation. The settlement process with respect to state court cases is nearing conclusion as well. While certain cases remain pending, Justice Helen Freedman has resolved over 1,000 cases included in the Brooklyn Navy Yard and Powerhouse consolidations through trial and settlement.

The following sections of this report outline the activities of the Special Master

---

1. As noted below—three defendants remain in a handful of cases that have been settled with all other defendants. The Special Master expects the cases against these few defendants to be resolved shortly.

with respect to the settlement processes instituted by the courts and the current status of all cases included in the consolidations. In addition, the attachments to this Report summarize the settlements achieved in connection with the federal and state court Powerhouse cases.*

## I. *Executive Summary*
### Asbestos Personal Injury and Wrongful Death Cases in the Eastern and Southern Districts of New York

| Consolidated Group | Number of Federal Cases | Number of Defendants | Number of Cases/Defendants Remaining in Federal Court |
|---|---|---|---|
| Brooklyn Navy Yard Cases (Phase I, II, III) | Approx. 400 | 116 | 0 |
| Powerhouse Cases | 696 | 194 | 1. 7 non-trial cases against Center for Claims Resolution members<br><br>2. 1 non-trial case against defendants Owens–Illinois & Garlock |
| Judge Sweet Cases | 457 | 86 | 0 (transferred by MDL panel) |

## II. *Brooklyn Naval Shipyard Consolidation*

In early 1990, the Honorable Jack B. Weinstein and the Honorable Helen E. Freedman consolidated, for settlement and pre-trial purposes, approximately 600 asbestos personal injury and wrongful death cases filed and to be filed in the United States District Courts for the Southern and Eastern Districts of New York and the New York State Supreme Court for the counties in the City of New York in which the plaintiffs alleged that exposure to asbestos occurred at the Brooklyn Navy Yard. A number of the cases in the consolidation involved plaintiffs whose claims were filed under the "revival" statute that enabled the filing of cases previously barred by the New York statute of limitations. The cases involved primarily insulators and others who engaged in shipbuilding at the Brooklyn Navy Yard from the 1930s through the early 1960s. The cases exhibited a fairly serious disease mix. Approximately 18 percent of the cases in the consolidation involved plaintiffs who asserted death or injury from mesothelioma; an additional 16 percent of the plaintiffs claimed death or injury from lung cancer; approximately 60 percent of the claims asserted the existence of asbestosis and the remainder of the cases involved claims of other forms of cancer or pleural disease. The cases as filed named 116 individual entities as defendants.

The Brooklyn Navy Yard settlement process was commenced in March of 1990. The initial phase of settlement activity involved the exchange of "settlement-oriented" case data including documentation of disease for each case, each plaintiff's job history, and the period and location of each plaintiff's alleged exposure to asbestos. In early May, 1990, after extensive discussions with the parties and analysis of historical settlement and verdict data, the Special Master distributed proposals to all de-

* Editor's Note—All further reference to attachments in this opinion have been deleted as they were not included for publication.

fendants outlining recommended terms for the settlement of all claims pending against each defendant.

Subsequently, the consolidated cases were divided into three groups—Phase I, II and III—based on the percentage of the plaintiff's alleged exposure to asbestos that occurred at the Brooklyn Navy Yard. The Phase I group included individuals who claimed that 90 percent or more of their alleged exposure to asbestos occurred at the Brooklyn Navy Yard. Phase II and III included individuals who alleged that 75 percent and 50 percent, respectively, of their alleged exposure to asbestos occurred at the Brooklyn Navy Yard.

After extensive meetings with the parties, the Special Master distributed (in August of 1990) revised settlement proposals regarding the Phase I cases. In August and September of 1990, intensive negotiation sessions were held under the aegis of the Special Master. The vast majority of the defendants settled all Phase I cases during these negotiations; in many instances, the defendants settled the Phase II and III cases as well. The federal court commenced trial of the 64 remaining Phase I federal cases on September 18, 1991. Of the 30 defendants initially involved in the Phase I cases, only five federal defendants remained at the time of verdict. During approximately the same period of time, the state court proceeded with trial of the claims against all remaining state defendants in a group of the Phase I state cases.

In late December of 1990, the Special Master commenced settlement negotiations regarding the defendants remaining in the 127 Phase II and 328 Phase III state and federal court Brooklyn Navy Yard cases. Each of the plaintiffs claimed some exposure to asbestos at the Brooklyn Navy Yard; however, all plaintiffs claimed exposure at a variety of other sites as well. An examination of the data provided by the

plaintiff firms indicated that the plaintiffs claimed exposure to asbestos at over 100 different locations and that the average plaintiff alleged exposure at 9 separate sites. A total of 103 entities (including bankrupt companies) were named as defendants.

After the formulation and submission of initial demands and offers, the Special Master conducted negotiation sessions in mid-February, prior to the scheduled federal court trial date of February 18, 1991. A number of settlements were concluded and, ultimately, 15 federal court cases were tried against the 4 defendants that did not settle all of their cases in the consolidation. Trial of the state court Brooklyn Navy Yard cases (as to those defendants that had not settled) proceeded during approximately the same period of time. All federal and state court Brooklyn Navy Yard cases were thus fully resolved.

### III. *Powerhouse Consolidations*

On February 27, 1991, Judge Charles P. Sifton ordered the consolidation of all asbestos personal injury and wrongful death cases then pending in the Eastern and Southern Districts of New York in which a portion of the plaintiff's alleged exposure to asbestos occurred during the construction, operation or maintenance of electrical facilities in New York. Ultimately, 696 cases were included in the federal court "Powerhouse Consolidation". Forty-eight of the cases in the consolidation were set for trial on damages issues, commencing on April 15, 1991 before Judge Sifton.[2] On April 11, 1991, Judge Sifton referred the Powerhouse cases to Judge Jack B. Weinstein for purposes of supervising settlement. On or about April 25, 1991, Justice Helen E. Freedman ordered the consolidation of approximately 880 state court cases involving alleged exposure to asbestos at Powerhouses in New York. By order dated April 18, 1991, issued jointly by the United States District Courts for the Eastern and Southern Districts of New York,

---

**2.** One of the cases represented by the plaintiff law firm of Weitz & Luxenberg was subsequent-

ly withdrawn from the consolidation.

and the Supreme Court of the State of New York, I was appointed as Special Master/Referee with a directive to assist in effecting a comprehensive settlement of all cases in the federal and state court consolidations.

## A. Profile of the Powerhouse Consolidation

The federal Powerhouse Consolidation comprised, as noted, 696 individual cases filed by six plaintiff law firms. The plaintiffs claimed exposure to asbestos-containing products primarily through construction, maintenance and operation activities at a number of different locations, including major electrical generating facilities, office buildings, airports and other transportation facilities in New York City and other locales in New York State. Approximately 21 percent of the cases involved plaintiffs asserting death or injury from a malignant disease (including mesothelioma, lung cancer, and other cancers). An additional 51.3 percent of the plaintiffs asserted that they suffered from asbestosis and 27.7 percent claimed the presence of pleural plaques or fibrosis.

At the commencement of settlement efforts, a total of 194 entities were named as defendants and/or third party defendants in the federal court consolidation. Approximately 109 of these entities were impleaded solely as third party defendants in the litigation.[3] (Third-party defendants primarily consisted of site owners, construction contractors and subcontractors and engineering firms, although many "traditional" manufacturers and distributors were also named as third parties in certain cases.) In addition, at least seven defendants and third-party defendants asserted indemnity claims (based on terms in construction contracts) against some 25 construction, engineering and design firms involved in the construction and repair of Powerhouses.

The state court Powerhouse consolidation involved essentially the same defendant parties as the federal consolidation and the plaintiffs generally exhibited a similar profile with respect to the circumstances of exposure. The state court cases also involved a substantial number of third-party defendants. The third-party plaintiff, Owens–Corning Fiberglas, impleaded approximately 131 entities as third-party defendants in various of the cases between July 25 and August 13, 1991.

## B. The Settlement Process

From approximately May 1, 1991 through June 10, 1991, the parties in the federal consolidation engaged in an abbreviated settlement-oriented information exchange and discovery process. During this "discovery phase", the plaintiff attorneys were requested to submit to the Special Master's office medical documentation of the alleged asbestos-related disease suffered by each plaintiff and information regarding the locations and time periods of each plaintiff's alleged exposure to asbestos. In accordance with this directive, the plaintiff firms deposited with the Special Master files regarding each plaintiff and the Special Master made these materials available to the defendant parties for inspection and copying.

In addition, the Special Master conducted an expedited settlement-oriented deposition/questionnaire process designed to elicit all information necessary for settlement. During the course of that process, 169 plaintiffs were deposed, and at least 183 individuals completed questionnaires regarding dates and places of the plaintiff's alleged exposure to asbestos.

During the "discovery phase" the Special Master met with both plaintiff attorneys

---

**3.** Third party actions were also filed against a number of entities that were named as direct defendants in certain of the cases. I note that the federal court impleader occurred shortly before commencement of trial and settlement activities and modifications to the third-party case lists continued during the initial six weeks of settlement activity, as discovery materials were gathered and analyzed. Thus, at the time settlement discussions began, a number of parties had had limited opportunity to analyze their potential liability.

and counsel for defendant companies involved in the litigation to discuss both potential settlement mechanisms and substantive settlement terms. Several ideas were explored, including (1) negotiating percentage shares among the defendants and subsequently conducting a mediation between the defendants and plaintiff firms to determine an aggregate settlement value for the cases and (2) the immediate commencement of direct negotiations between each plaintiff firm and each defendant and third-party defendant. Ultimately, the Special Master determined that the best approach, in terms of efficiency and likelihood of success, would be to establish an aggregate settlement value for the cases (based on prior settlements for similar cases in the jurisdiction) and to allocate that aggregate settlement amount among all defendants and third-party defendants. Accordingly, while the discovery activities were proceeding, the Special Master met extensively with plaintiff counsel to discuss an overall aggregate settlement amount based on each plaintiff firm's settlement experience in New York for similar cases. The aggregate settlement amounts ultimately agreed to by the plaintiff firms took into account the varying diseases alleged by the plaintiffs, the number of cases involved in the consolidation, and prior settlements in the same jurisdiction for cases of similar characteristics.

On July 2, 1991, the Special Master distributed 106 proposals involving 117 separate entities regarding the settlement of the cases in the federal and state Powerhouse consolidations. The proposals set forth recommended terms for the settlement of federal cases and indicated that such terms could guide settlement of state court actions.[4] Subsequently, the Special Master distributed settlement proposals to 16 additional entities. The remainder of the defendants and third party defendants

originally named in the litigation either did not file an appearance, had settled previously or were bankrupt or out of business.

Settlement discussions and negotiations continued throughout the summer of 1991. In August of 1991, the jury rendered a verdict on damages for the group of cases on trial in the federal court. The damages verdict, which totalled $92,254,610 for 45 cases, necessitated some revision in the settlement process: negotiations conducted after the verdict was announced involved separate demands for cases included in the federal trial group. The parties continued to meet, under the aegis of the Special Master, during the fall of 1991 and early 1992 to negotiate settlements. *As of February 6, 1992, the last remaining major defendants in the federal court litigation settled the trial and non-trial cases in which they were named, thus concluding for all practical purposes the federal court consolidation.* Ultimately, only two federal Powerhouse cases were tried to verdict; at the time the cases were submitted to the jury, only one defendant remained in each case.

C. Status of Federal Powerhouse Consolidation

With a few minor exceptions, which are discussed below, the 696 cases in the federal court Powerhouse consolidation have been resolved through settlement. The Special Master has documented a total of 202 separate settlements regarding the federal Powerhouse cases, involving 11,871 individual plaintiff claims. In addition, in conjunction with resolving the federal court consolidated cases, a substantial number of parties resolved cases included in the state Powerhouse consolidation, as well as cases filed in other jurisdictions in New York, Connecticut, Oregon and Texas. This list includes the name of each defendant com-

---

**4.** At the time the initial settlement proposals were distributed, the direct defendants had not yet filed third party actions in the state court cases. (Third-party defendants were impleaded in the state cases beginning on July 25, 1991.) Accordingly, the Special Master did not have complete defendant and case lists and was thus

unable at that time to formulate comprehensive settlement recommendations for the state court cases. However, discussions and negotiations regarding federal cases encompassed state cases and the Special Master distributed subsequent proposals regarding state cases.

pany, the number of federal cases settled with each plaintiff firm and a notation regarding state court settlements. Following is a summary of the status of the federal Powerhouse cases that were not fully settled.

### 1. *Cases in the Trial Group*

Forty-six of the forty-eight cases in the original federal court trial group were fully resolved through settlement. Only two of the original 48 cases were tried to verdict and these two cases were settled as to all but two defendants: John Crane, which was a defendant in one case (McPadden) and Keene, which was a defendant in one case (Lewis).

### 2. *Non–Trial Cases*

*The 649 non-trial cases included in the federal consolidation have been settled as to all federal defendants,* with the following exceptions:

a. The Center for Claims Resolution companies remain as defendants in seven cases filed by the plaintiff law firm of Greitzer & Locks.

b. Owens–Illinois and Garlock remain as defendants in one case filed by the plaintiff firm of Silber, Pearlman and Worthington.

### D. Status of State Court Powerhouse Consolidation

Justice Helen E. Freedman consolidated approximately 880 state court Powerhouse cases on April 25, 1991. The 880 cases were filed by 5 plaintiff firms. All were set for trial—thirty of the cases on all issues and the remainder on liability only—commencing in the Fall of 1991. Testimony in the trials of 30 cases was completed as of March 13, 1992. Of the initial trial group of 30 cases, 21 cases were settled completely. The 9 trial cases remaining were settled as to the vast majority of defendants: only three companies (W.R. Grace, Keene and Robert A. Keasbey) remained as defendants as of March 9, 1992. In addition, the non-trial cases have been substantially settled: As of late February 1992, the plaintiff firm of Wilentz, Gold-

man & Spitzer had settled in full its 670 cases included in the consolidation and the remaining cases have been settled with the vast majority of defendants.

The Special Master continues to work with the parties in the state court consolidation, at the request and under the direction of Justice Freedman, to assist in the resolution of the remaining claims.

### IV. *Judge Sweet Consolidation*

On July 12, 1991, all asbestos personal injury and wrongful death cases in the Eastern and Southern Districts of New York not included in the Brooklyn Navy Yard and Powerhouse consolidations were consolidated before Judge Robert Sweet. Shortly after the cases were consolidated, the Judicial Panel on Multi–District Litigation ordered the transfer of all federal court asbestos cases not on trial to the MDL Court in Philadelphia. The "Judge Sweet Consolidation" cases were transferred in accordance with the order and thus are no longer pending in the Eastern and Southern Districts.

### V. *Conclusion*

The Special Master is pleased to report that, subject to the minor exceptions noted above, the federal court Powerhouse consolidation has been settled. Only two cases were tried to verdict and at the time these cases were submitted to the jury, only one defendant remained in each case. In addition, a few defendants remain in a small number of non-trial cases; each of these remaining cases has been settled with all other defendants. The Special Master is also pleased to note that Justice Freedman's state court Powerhouse cases have been substantially resolved. Ten cases remain on trial with respect to three defendants and of the remaining 850 cases, 650 have been fully settled and 200 have been settled with virtually all defendants.

At present, therefore, there is no longer a need for the services of a Special Master to assist the parties in effecting a comprehensive settlement of asbestos cases in the federal courts. At this point, however, the

Special Master continues to work with the parties to allocate settlement moneys among individual plaintiffs, to complete documentation, finalization and implementation of all settlements, and to assist in resolving disputes between various defendants and their insurers and alleged indemnitors.

Accordingly, I hereby request that I be continued as Special Master to complete allocation of settlements among individual plaintiffs and to assist as necessary in preparing documentation that may be required to finalize and implement the settlements. In addition, I request authorization to complete settlement activities with respect to claims by parties in the consolidation against insurance carriers and indemnitors. I am also prepared, at Justice Freedman's direction, to continue as Referee in state court to assist in completion of settlement efforts.

Respectfully submitted,
Kenneth R. Feinberg
Special Master/Referee

Date: March 13, 1992